# United States Tax Court

T.C. Memo. 2023-54

ESTATE OF ANTHONY R. TANNER, DECEASED,
MARGLEN M. TANNER, PERSONAL REPRESENTATIVE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6521-16.                                  Filed May 1, 2023.

————

*Joseph M. Erwin*, for petitioner.

*Ladd Christman Brown*, *Lauren B. Epstein*, *Alexander N. Martini*, and
*Jamie A. Schindler*, for respondent.


## MEMORANDUM OPINION

BUCH, *Judge*: Anthony R. Tanner was a U.S. citizen who filed income tax returns with the Virgin Islands Bureau of Internal Revenue (VIBIR), but not the U.S. Internal Revenue Service, for 2003 and 2004 (years in issue). On those returns, he claimed to be a bona fide resident of the U.S. Virgin Islands (USVI). Because he claimed USVI residency but had paid U.S. taxes, the VIBIR requested that those taxes be "covered over" to the USVI Treasury through "cover-over requests" sent to the Internal Revenue Service (IRS) in 2005 and 2006. A cover-over request typically includes a partial or complete copy of a taxpayer's USVI return. Nearly a decade later, the Commissioner sent Mr. Tanner a notice of deficiency for the years in issue. In the notice, the Commissioner determined that Mr. Tanner was not a bona fide USVI resident and that he was required to file U.S. income tax returns. The Commissioner determined U.S. income tax deficiencies and penalties.

**[\*2]**     The Commissioner must assess tax within three years after a return is properly filed by the taxpayer. I.R.C. § 6501(a).[1] For a return to be "properly filed by the taxpayer," the taxpayer must have intended the document to be filed as his return. Mr. Tanner's estate (Estate) makes three arguments for why the Commissioner's notice of deficiency should be barred by the statute of limitations regardless of whether Mr. Tanner was a bona fide USVI resident.

The Estate contends that the three-year period for assessment under section 6501(a) commenced when the VIBIR transmitted cover-over requests to the IRS. However, whether Mr. Tanner intended that those documents be filed as his returns is an outstanding issue of material fact.

The Estate argues that the three-year period for assessment commenced when Mr. Tanner filed USVI returns with the VIBIR. But the U.S. Court of Appeals for the Eleventh Circuit, the court to which this case is appealable, has held that the filing of a USVI return does not begin the running of the period of limitations for U.S. income tax purposes unless the taxpayer is a bona fide USVI resident. *Commissioner v. Estate of Sanders*, 834 F.3d 1269 (11th Cir. 2016), *vacating and remanding* 144 T.C. 63 (2015).

The Estate's remaining argument is that we should apply Treasury Regulation § 1.932-1(c)(2)(ii). But by its own terms, the regulation does not apply for the years in issue. The Estate asks us to invalidate the effective date so that it would apply to the years in issue. But we have previously held that this regulation's effective date is valid. *Tice v. Commissioner*, No. 24983-15, 160 T.C., slip op. at 6, 11–13 (Apr. 10, 2023).

Because issues of fact remain as to the Estate's principal argument, we must deny summary judgment.

### *Background*

Mr. Tanner filed USVI income tax returns for 2003 and 2004 with the VIBIR on December 29, 2004, and October 17, 2005, respectively.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] The VIBIR directs individual taxpayers to use the same forms that the IRS uses in administering the income tax laws under the Internal Revenue Code. Mr. Tanner followed the VIBIR's directions by using Form 1040, U.S. Individual Income Tax Return. On his returns, he claimed to be a bona fide USVI resident.

The VIBIR made "cover-over" requests to the IRS. A cover-over request is typically made when a bona fide USVI resident pays U.S. taxes but files a USVI return. *See* I.R.C. § 7654. Through the cover-over request, the VIBIR requests that taxes paid to the United States be remitted to the USVI. The request will typically include some or all of the taxpayer's USVI return. The IRS received cover-over requests from the VIBIR relating to Mr. Tanner's 2003 and 2004 returns on April 11, 2005, and September 4, 2006, respectively. The 2003 request included the first two pages of Mr. Tanner's 2003 return, a Schedule C, Profit or Loss From Business, and a Form W–2, Wage and Tax Statement. The parties cannot find the 2004 request.

On December 9, 2015, the Commissioner mailed Mr. Tanner a notice of deficiency for 2003 and 2004. In that notice, the Commissioner determined that Mr. Tanner was not a bona fide USVI resident and that all of his income was from U.S. sources. The Commissioner further determined that Mr. Tanner was required, but failed, to file U.S. federal income tax returns for 2003 and 2004. The Commissioner determined deficiencies for 2003 and 2004 totaling $3,230,967 and additions to tax totaling $1,624,168.

While residing in Florida, Mr. Tanner timely filed a Petition disputing the notice of deficiency in its entirety. He alleged the Commissioner erred in determining that he was not a bona fide USVI resident, that his income was from U.S. sources, and that he was required to file U.S. income tax returns. Mr. Tanner also argued that the Commissioner is barred from assessing the deficiencies because the period of limitations expired before the Commissioner issued the notice of deficiency. While this case has been pending, Mr. Tanner passed away.[2]

---

[2] On March 27, 2017, Marglen M. Tanner was appointed personal representative of the Estate. On April 19, 2017, we granted a Motion to Substitute Parties pursuant to Rule 63. The Estate was substituted for Mr. Tanner as the petitioner in this case, and the caption was amended accordingly.

**[\*4]**                                              *Discussion*

Pending before us is the Estate's Motion for Summary Judgment in which the Estate asks us to find that the three-year period of limitations to assess deficiencies for the years in issue has lapsed. The Commissioner opposes the Estate's Motion. He argues that the Motion should be denied because material facts remain in dispute. Whether the three-year period applies hinges upon whether a return has been filed by the taxpayer. Without the filing of a return, the period never begins to run. I.R.C. § 6501(c)(3). Thus, we must decide whether Mr. Tanner filed a U.S. return, and if so, when.

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment here, we construe factual materials and make factual inferences in the light most favorable to the Commissioner, the nonmoving party. *See Sundstrand Corp.*, 98 T.C. at 520.

II.   *Governing Statutes*

A.    *U.S. Statute of Limitations*

Section 6501(a) generally requires the Commissioner to assess tax within three years after a return is filed, subject to various exceptions. "Return" is defined as "the return required to be filed by the taxpayer." I.R.C. § 6501(a). Thus, to determine whether the three-year period has been triggered, we consider (1) whether a document submitted was the "return" required to be filed, and if so, (2) whether it was properly "filed by the taxpayer." *Appleton v. Commissioner*, 140 T.C. 273, 284 (2013). In the absence of a return, "tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." I.R.C. § 6501(c)(3). In this case, the parties disagree about whether the general three-year period or the exception for nonfilers applies.

**[\*5]** B.     *USVI Income Taxation—Section 932*

   1. *Background*

  The USVI is a U.S. territory, but it has a separate tax system that "mirrors" the U.S. system. 48 U.S.C. § 1541(a); *Appleton*, 140 T.C. at 278. The USVI uses a "mirror code" that is identical to the Internal Revenue Code, except the mirror code replaces "United States" with "Virgin Islands." *Appleton*, 140 T.C. at 278. The VIBIR administers the mirror code. *See Coffey v. Commissioner*, 663 F.3d 947, 949 (8th Cir. 2011). Since Congress established the mirror code in 1921, filing requirements for U.S. citizens residing in the USVI have changed. *See Appleton*, 140 T.C. at 278–79. Originally, U.S. citizens residing in the USVI who had income from both sources "were required to file returns and pay taxes to both jurisdictions." *Id.* at 278. In 1954, Congress enacted a rule allowing permanent USVI residents to meet their U.S. tax obligations by paying income tax to the USVI alone. *See id.* at 279. The rule also provided that U.S. taxes paid by USVI residents would be covered over (i.e., paid to) the USVI Treasury. *Id.*

  In 1986, Congress replaced the existing rule with section 932, which applies for the years in issue here. *Appleton*, 140 T.C. at 279. Under section 932, a U.S. citizen who is a "bona fide" USVI resident and meets certain requirements owes income tax to the USVI, not the United States. *See* I.R.C. §§ 932(b), (c)(4), 7654; *Appleton*, 140 T.C. at 281; *Cooper v. Commissioner*, T.C. Memo. 2015-72, at \*15. If such an individual happens to pay U.S. income tax, section 7654(a) provides a coordination rule such that the U.S. taxes "shall be covered into the Treasury" of the USVI. *See Hulett v. Commissioner*, 150 T.C. 60, 65–66 (2018), *rev'd and remanded sub nom. Coffey v. Commissioner*, 987 F.3d 808 (8th Cir. 2021); *Appleton*, 140 T.C. at 279; *see also* 48 U.S.C. § 1642 (providing that taxes shall be covered into the USVI and "shall be available for expenditure as the [USVI] Legislature . . . may provide"). To get these taxes to the USVI, the VIBIR sends the IRS a cover-over request that typically includes copies of the taxpayer's USVI return (or parts thereof). *See Hulett*, 150 T.C. at 65–66. Mr. Tanner took the position that he was a bona fide USVI resident on his USVI returns. He did not file U.S. returns, and the VIBIR requested the U.S. taxes he had paid to be covered over into the USVI.

**[*6]**        2.    *Filing Requirements*

Section 932 sets out different filing requirements for taxpayers (including U.S. citizens such as Mr. Tanner) according to whether they: (1) reside in the USVI or (2) do not reside in the USVI but receive USVI-source income. *See* I.R.C. § 932(a), (c). A U.S. citizen who is a bona fide USVI resident must file a return with the USVI. I.R.C. § 932(c)(1) and (2). But if that person is not a bona fide USVI resident and has USVI-source income, he or she must file a return with the United States and the USVI. I.R.C. § 932(a)(1) and (2). For purposes of the pending Motion, the Estate does not assert that Mr. Tanner was a bona fide USVI resident, and we must presume for purposes of deciding the Motion that he was not.[3] Because we presume that Mr. Tanner was not a bona fide USVI resident, we also presume he was required to file U.S. returns for 2003 and 2004.

When Mr. Tanner filed his returns, the law was unsettled as to how the different filing requirements in section 932 would operate in conjunction with section 6501(a). *See Hulett*, 150 T.C. at 75–76. This uncertainty results in the question presented here: If a U.S. citizen claims bona fide USVI residency on USVI returns filed with the VIBIR, will those returns trigger the three-year period for assessing U.S. tax even if that person was not a bona fide USVI resident?

The IRS issued interim guidance addressing this question in 2007, after Mr. Tanner filed his USVI returns and after the IRS received the cover-over requests for the years in issue. I.R.S. Notice 2007-19, §§ 2 and 3, 2007-1 C.B. 689, 689–90, provided that an individual who took the position on a USVI return that he was a bona fide USVI resident and had gross income greater than $75,000 could trigger section 6501(a) only by also filing a U.S. Form 1040 reporting no gross income (a zero return) with the IRS. Taxpayers with at least $75,000 of income could elect to apply the notice retroactively to tax years ending before

---

[3] Section 932 was amended during the years in issue. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 908(c)(2), 118 Stat. 1418, 1656. Effective until October 22, 2004, bona fide residency was determined on the basis of residency on the last day of the taxable year. *See* I.R.C. § 932(a) and (c) (before amendment). Effective for tax years ending after October 22, 2004, the determination is based on the entire taxable year, not just the last day. *See* I.R.C. § 932(a), (c) (after amendment). The distinction is irrelevant for purposes of the pending Motion because we must presume Mr. Tanner was not a bona fide USVI resident.

**[\*7]** December 31, 2006, by filing a zero return for a past taxable year. *Id.* § 3, 2007-1 C.B. at 689–90.

On April 9, 2008, the Secretary promulgated final regulations. *See* Treas. Reg. § 1.932-1; T.D. 9391, 2008-1 C.B. 945. Treasury Regulation § 1.932-1(c)(2)(ii) provides:

> For purposes of . . . section 6501(a), an income tax return filed with the Virgin Islands by an individual who takes the position that he or she is a bona fide resident of the Virgin Islands . . . *will be deemed to be a U.S. income tax return*, provided that the United States and the Virgin Islands have entered into an agreement for the routine exchange of income tax information satisfying the requirements of the Commissioner. The working arrangement announced in Notice 2007-31 satisfies the condition of the preceding sentence. See Notice 2007-31 (2007-16 IRB 971) (applicable to taxable years ending on or after December 31, 2006, unless and until arrangement terminates). In the absence of such an agreement, individuals to whom this paragraph (c) applies generally must file an income tax return for the taxable year with the United States to begin the period of limitations for Federal income tax purposes as provided in section 6501(a) . . . .

(Emphasis added.) This regulation applies prospectively for tax years ending after April 9, 2008, and could be applied retroactively to tax years ending on or after December 31, 2006. Treas. Reg. § 1.932-1(j). The regulation provides that the interim rules of Notice 2007-19 would still be applied to tax years ending before December 31, 2006. Treas. Reg. § 1.932-1(c)(2)(ii). Thus, this regulation was not applicable for the years in issue, and under Notice 2007-19, Mr. Tanner could have triggered section 6501(a) only by filing zero returns with the IRS.

III.    *The Estate's Arguments*

The Estate argues that the notice of deficiency is time barred under section 6501(a) because the Commissioner did not issue the notice within three years after Mr. Tanner filed returns for 2003 and 2004. The Estate offers three alternative grounds for this argument. First, the Estate contends that section 6501(a) was triggered when the IRS received cover-over requests from the VIBIR. *See Hulett*, 150 T.C. at 96–97. Second, the Estate contends that section 6501(a) was triggered

[*8] when Mr. Tanner filed his returns with the VIBIR. *See id.* at 98–104 (Thornton, J., concurring in result only). Finally, the Estate contends that Mr. Tanner's USVI returns should be deemed U.S. returns pursuant to Treasury Regulation § 1.932-1(c)(2)(ii) because that regulation is invalid to the extent that is does not apply for the years in issue. To address the first two grounds, we must revisit *Hulett*, a Court-reviewed opinion in which we issued lead, concurring, and dissenting opinions, but none garnered a majority vote. *See Hulett*, 150 T.C. at 97, 104, 107.

A. *Were the Cover-Over Requests Returns Properly Filed by the Taxpayer?*

Citing the lead opinion in *Hulett*, the Estate argues that the VIBIR's transmission of cover-over requests to the IRS in 2005 and 2006 triggered the three-year period for assessment. The opinion of the Court concluded that partial copies of USVI returns (first two pages and Forms W–2) that the IRS received in the cover-over requests were federal income tax returns for purposes of section 6501(a) after applying the test laid out in *Beard v. Commissioner*, 82 T.C. 766 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986). *Hulett*, 150 T.C. at 81, 96–97. To be a "return" under *Beard*, 82 T.C. at 777, a document must (1) contain "sufficient data to calculate tax liability," (2) "purport to be a return," (3) "be an honest and reasonable attempt to satisfy the requirements of the tax law," and (4) be executed "under penalties of perjury." The opinion of the Court concluded that the cover-over requests were "returns" because they satisfied this test. As for the section 6501(a) requirement that those returns were "filed by the taxpayer," the opinion relied on a deemed concession by the IRS that those returns had been filed. *Hulett*, 150 T.C. at 80. The opinion of the Court thus held that the cover-over requests triggered section 6501(a). *Hulett*, 150 T.C. at 80.

Genuine disputes of material fact preclude us from applying the opinion of the Court's holding here. Unlike *Hulett*, the Commissioner does not concede in this case that the cover-over requests were returns filed by Mr. Tanner. Although third parties may file on a taxpayer's behalf in certain circumstances, *see* Treas. Reg. § 1.6012-1(a)(5), the taxpayer must intend that the return be filed, *see, e.g., Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453, 462 (1930); *Espinoza v. Commissioner*, 78 T.C. 412, 422 (1982); *Dingman v. Commissioner*, T.C. Memo. 2011-116, 101 T.C.M. (CCH) 1562, 1569; *Allnutt v. Commissioner*, T.C. Memo. 2002-311, 84 T.C.M. (CCH) 669, 673, *aff'd*, 523 F.3d 406 (4th Cir. 2008). Intent is a factual issue that depends on

**[*9]** the circumstances of each case. *See Rutter v. Commissioner*, T.C. Memo. 2017-174, at *25. The Commissioner has not conceded, and the Estate has not established, that Mr. Tanner intended the VIBIR's transmission of the cover-over requests be the filing of his returns. Thus, we cannot grant summary judgment on this ground. Moreover, the record in this case includes only a copy of the 2003 cover-over request. Without the 2004 cover-over request, we cannot determine whether its contents satisfy *Beard*.

B. *Were the USVI Returns Filed with the VIBIR Returns Properly Filed by the Taxpayer?*

Citing the concurring opinion in *Hulett*, the Estate argues that Mr. Tanner's filing of returns with the VIBIR in 2004 and 2005 triggered the three-year period for assessment. The concurring opinion concluded that returns filed with the VIBIR were federal income tax returns under *Beard* regardless of whether the taxpayers were bona fide USVI residents. *Hulett*, 150 T.C. at 98 (Thornton, J., concurring in result only).

The Eleventh Circuit, to which an appeal of this case would lie, takes a different approach. *See Commissioner v. Estate of Sanders*, 834 F.3d 1269. In *Estate of Sanders*, the Eleventh Circuit held that "a taxpayer who files a return only with the VIBIR does not trigger the statute of limitations unless he actually is a bona fide resident of the USVI." *Commissioner v. Estate of Sanders*, 834 F.3d at 1278–79. The Eleventh Circuit believed this holding was "clearly indicated by the plain language of the statute" and noted that section 932(a) "expressly requires" a U.S. citizen who is not a bona fide USVI resident to file both U.S. and USVI returns. *Commissioner v. Estate of Sanders*, 834 F.3d at 1276, 1279. The Eleventh Circuit did not create an exception based on a taxpayer's subjective, good faith belief that he was a bona fide USVI resident. *Id.* at 1279.

We must follow the precedent of the Court of Appeals to which an appeal of a case would lie if it is squarely on point. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). Because the Eleventh Circuit has squarely held that Mr. Tanner had to be a bona fide USVI resident for his USVI returns to trigger section 6501(a), and we must presume for purposes of deciding this Motion that he was not one, we cannot grant summary judgment on this ground.

**[\*10]**   C.   *Should Treasury Regulation § 1.932-1(c)(2)(ii) Apply?*

Finally, the Estate argues that Treasury Regulation § 1.932-1(c)(2)(ii) is invalid to the extent that it does not apply for the years in issue. Treasury Regulation § 1.932-1(c)(2)(ii) provides that a return filed with the USVI "by an individual who takes the position that he . . . is a bona fide [USVI] resident" is "deemed to be a U.S. income tax return" for purposes of section 6501(a). The regulation applies prospectively to tax years ending after April 9, 2008, and could be applied retroactively to tax years ending on or after December 31, 2006. Treas. Reg. § 1.932-1(c)(2)(ii), (j). The Estate argues that Treasury acted arbitrarily and capriciously, and in violation of the Fifth Amendment Due Process Clause, by not extending the benefit of this regulation to taxpayers for tax years ending before December 31, 2006. We recently addressed similar arguments in *Tice*, 160 T.C., slip op. at 11–13.

In *Tice*, we concluded that the regulation was valid because Treasury "articulated a satisfactory explanation for its action . . . in the preamble to the final rule." *Id.* at 12. The preamble explained that the "rule applies as long as the IRS and [the USVI] have in place an agreement for the automatic exchange of information." *Id.* (quoting T.D. 9391, Preamble, 2008-1 C.B. at 951). Because a 2007 arrangement satisfied this condition, the "rule applie[d] to years ending on or after December 31, 2006." *Id.* We further explained that were we to invalidate the regulation, the "consequence would be to 'hold [it] unlawful and set it aside,' 5 U.S.C. 706(2), not make it applicable for the years in issue." *Id.* We also rejected the argument that Treasury Regulation § 1.932-1 violates due process because it fails to give fair warning of the conduct it requires. We rejected this argument because "the conduct required is found in the statute—i.e., section 932(a)(2)—not the regulations. *See Hulett*, 150 T.C. at 95 ('[T]he absence of regulations doesn't repeal section 932.')." *Tice*, 160 T.C., slip op. at 12.

The Estate "understandably wants the rule in Treasury Regulation § 1.932-1(c)(2)(ii) to apply for the years in issue. But it did not." *See id.* Accordingly, we cannot grant the Motion for Summary Judgment on this ground.

IV.   *Conclusion*

We may grant summary judgment only if material facts are not in dispute and a decision can be rendered as a matter of law. Because

**[*11]** material facts remain in dispute, we must deny the Estate's Motion for Summary Judgment.

*An appropriate order will be issued.*